United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN BROOKS, K16234,

Plaintiff,

v.

GUIMMARA BERRY, et al.,

Defendant(s).

Case No. 25-cv-00720-CRB (PR)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**

(ECF Nos. 25, 30 & 31)

On September 15, 2025, Plaintiff Steven Brooks, a state prisoner incarcerated at San Quentin Rehabilitation Center (SQRC), filed a pro se First Amended Complaint (FAC) under 42 U.S.C. § 1983 alleging that Guimmara Berry, the SQRC public information officer, retaliated against him for his role in the editorial content in the prison paper that was critical of prisons and for his filing prison grievances by firing him from his job as editor-in-chief of the San Quetin News, falsely charging him with a RVR for engaging in an overfamiliar sexual relationship with a prison employee, and banning him from the education complex where the media center is located. Plaintiff further alleges that SQRC staff members D. Schlosser, J. Fernandez, T. Reynolds, E. Patao, T. Johnson, Y. Franco and F. Rodriguez helped further Berry's retaliation against him by sustaining Berry's initial false RVR and/or by concocting a series of further false charges against Plaintiff to keep him from the media center and from regaining his job as editor-in-in chief of the San Quentin News and/or by falsely interfering with Plaintiff seeking other employment.

On October 30, 2025, the Court screened the FAC and found that, liberally construed, Plaintiff's allegations appear to state arguably cognizable First Amendment retaliation claims under § 1983 (and related state law claims under § 1367) against Berry, Schlosser, Fernandez, Reynolds, Patao, Franco and Rodriguez, and ordered them (Defendants) served.[1]

[1] The Court dismissed Plaintiff's due process and intentional racial discrimination claims under § 1983 with prejudice and dismissed Plaintiff's related state law claims under § 1367 without prejudice to pursuing them in state court.

Currently before the Court of decision is Defendants' motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) on four separate grounds.[2] First, Defendants argue that Plaintiff's claims seeking damages for actions committed by Defendants in their official capacities are barred by the Eleventh Amendment. Second, Defendants argue that Plaintiff does not properly state a claim for First Amendment retaliation. Third, Defendants argue that, even if Plaintiff states a retaliation claim, they are protected from liability due to qualified immunity. And fourth, Defendants argue that because Plaintiff does not allege compliance with the California Tort Claims Act, his state law claims under § 1367 should be dismissed. Plaintiff has filed an opposition, and Defendants have filed a reply.

Plaintiff recently filed a motion for leave to file a second amended complaint to add two more defendants to this action, and a motion for preliminary injunctive relief reinstating his access to prison media vocation programs.

## I. BACKGROUND

Plaintiff has been a freelance journalist since the summer of 2020. FAC ¶ 14. In August 2021, he began working as a reporter for the San Quentin News (SQN), which he describes as a "publication written and produced by incarcerated people." Id. In February 2023, Plaintiff became editor-in-chief of the SQN. Id. In that role, Plaintiff wrote and oversaw the publication of articles focused on promoting prison safety, and some of these articles were seen as criticizing prison administrators. Id. ¶ 15. In response, Plaintiff alleges that Defendant Berry told him that he was "going too hard in the paint" and pressured him to "tone down" his reporting. Id. ¶ 16.

Independent of his work for the SQN, Plaintiff helped produce a prison reform report for The People in Blue (TPIB), an organization of incarcerated individuals that Plaintiff co-founded. Id. ¶ 17. Plaintiff alleges that the Reimagine San Quentin Initiative, which was established by a Governor-created advisory council, adopted the TPIB report. Id. Plaintiff alleges that Berry

[2] Defendant Schlosser passed away on July 11, 2025, before Plaintiff filed his FAC adding Schlosser and other additional defendants, see Mot. to Dismiss (ECF No. 25) at 1 n.1, and Plaintiff has expressed his desire to dismiss Schlosser from the lawsuit, see Mot. for Leave to File Second Am. Compl. (ECF No. 30) at 3. Defendant Schlosser is DISMISSED.

United States District Court
Northern District of California

disliked TPIB and accused Plaintiff of circumventing her authority by issuing the report without seeking prior approval from her. Id.

On December 8, 2023, Berry fired Plaintiff from his role as editor-in-chief of the SQN. Id. ¶ 16. Plaintiff alleges that the firing was retaliation for exercising his First Amendment rights. Id. ¶ 18. In additional retaliation to justify the firing, Plaintiff alleges that Berry "fabricated a false 128-B classification chrono and a 115 Rule Violation Report (RVR), alleging that Plaintiff was in a romantic relationship with [an] employee and clinical psychologist named Kathryn Rosenberg." Id. These accusations were also used to "permanently ban [Plaintiff] from participation in any media-related rehabilitative programming." Id. ¶ 19.[3]

Plaintiff alleges that after he filed a grievance challenging his termination, Berry told him, "You shouldn't have grieved me," and proceeded to retaliate against him by instructing other prison officials to prevent Plaintiff from entering the education area, although according to Plaintiff, "[e]ducation is a common area in the prison." Id. ¶¶ 20–21.

Plaintiff further alleges that Defendants Fernandez, Reynolds, Patao, Johnson, Franco and Rodriguez helped further Berry's retaliation against Plaintiff by sustaining Berry's initial false RVR and/or by concocting a series of further false charges against Plaintiff to keep him from the media center and from regaining his job as editor-in-in chief of the SQN and/or by falsely interfering with Plaintiff seeking other employment. See id. ¶¶ 21–34.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for a "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not

[3] Plaintiff was eventually exonerated of the RVR charges. FAC ¶ 27.

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

### A. Official-Capacity Damages Claims

Plaintiff sues each defendant in his or her "individual and official capacity." FAC ¶¶ 5–13. Defendants note that the Eleventh Amendment prohibits official capacity monetary claims and argue that Plaintiff's official-capacity claims for damages should be dismissed. The Court agrees.

"Claims under § 1983 are limited by the scope of the Eleventh Amendment." Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997). The Supreme Court has held that, because of the Eleventh Amendment, "state officials 'acting in their official capacities' are outside the class of 'persons' subject to liability under" § 1983. Hafer v. Melo, 502 U.S. 21, 22–23 (1991) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). A state prison official sued for damages in his or her official capacity is therefore entitled to Eleventh Amendment immunity.

To the extent that Plaintiff seeks damages for acts committed by Defendants in their official capacities, the claims are dismissed with prejudice. But because state officials sued in their individual capacities are not entitled to similar immunity, Plaintiff may continue with his claims for damages for acts committed by Defendants in their individual capacities. See id. at 23.

### B. First Amendment Retaliation Claims

To state a claim of First Amendment retaliation in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005)).

Defendants dispute the sufficiency of Plaintiff's allegations regarding the fourth prong of a viable First Amendment retaliation claim. They argue that Plaintiff fails to allege that any of Defendants' alleged conduct chilled the exercise of his First Amendment rights. But the relevant

inquiry for the fourth prong of the Rhodes test is not whether Plaintiff was personally chilled, but rather whether "a person of ordinary firmness" would have been chilled by the defendants' alleged conduct. Rhodes, 408 F.3d at 568 (quoting Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999)). And here, Defendants' alleged conduct would clearly chill a person of ordinary firmness because if a person of ordinary firmness were fired because of their First Amendment activity, they—believing that more First Amended activity might lead to additional adverse consequences—would be hesitant from engaging in future First Amendment activity. Plaintiff's First Amendment retaliation claim against Defendants sufficiently satisfies the fourth prong of the Rhodes test. See id. at 568.[4]

C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from damages even if Plaintiff states a First Amendment retaliation claim against them. But because Plaintiff's allegations, accepted as true, describe the violation of a clearly established constitutional right, Defendants are not entitled to qualified immunity at the motion to dismiss stage.

When considering qualified immunity at the motion to dismiss stage, "dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." Polanco v. Diaz, 76 F.4th 918, 925 (9th Cir. 2023) (quoting O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016)). Under qualified immunity, "government officials are shielded from liability under 42 U.S.C. § 1983 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" Bird v. Dzurenda, 131 F.4th 787, 790 (9th Cir. 2025) (quoting Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020)). While there need not be a previous case "on all fours" with the present facts, Rico, 980 F.3d at 1298, caselaw must "have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

[4] Defendants' reliance on Second Circuit caselaw for the proposition that when "a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech," Curley v. Village of Suffern, 268 F.3d 65, 73 (2nd Cir. 2001), is misplaced. Ninth Circuit caselaw is clear that a plaintiff need not show a change in behavior. See Rhodes, 408 F.3d at 569 ("[A defendant] does not have to demonstrate that his speech was actually inhibited or suppressed.") (internal quotation marks omitted).

United States District Court
Northern District of California

Defendants describe the qualified immunity inquiry at issue as "whether it had been clearly established that incarcerated persons had a right to be free from removal from Editor-in-Chief positions pursuant to pertinent disciplinary charges and when the removal did not chill First Amendment activity." Mot. To Dismiss at 8. But there are two problems with this formulation. First, at the motion to dismiss stage, the alleged factual matter must be "taken as true." Twombly, 550 U.S. at 556. By stating both that the disciplinary charges were "pertinent" and that "the removal did not chill First Amendment activity," Defendants fail to accept Plaintiff's allegations as true. Second, Defendants' formulation of the legal question is too narrow. A "clearly established" violation of the law does not require that the "very action in question has previously been held unlawful." Wilson v. Layne, 526 U.S. 603, 615 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Rather, it requires that "in the light of pre-existing law the unlawfulness must be apparent." Id. To show this, caselaw need not specifically discuss "removal from Editor-in-Chief positions," but can more generally address when it is unlawful to fire someone from their prison job and/or take other adverse action against them.

At this proper level of generality, binding case law indicates that, taking Plaintiff's allegations as true, Defendants violated a clearly established constitutional right. In the context of prison, the prohibition against retaliatory punishment is clearly established law for qualified immunity purposes. See Chavez v. Robinson, 12 F.4th 978, 1001 (9th Cir. 2021); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). So is the retaliatory firing from a prison job. See Vignolo v. Miller, 120 F.3d 1075, 1078 (9th Cir. 1997) (prisoner may state 1st Amendment claim for retaliatory firing from prison job even if there is no constitutional right to prison employment). And it does not necessarily matter (at least at this stage in the proceedings) that adverse actions were taken pursuant to disciplinary charges or findings because "purely retaliatory actions taken against a prisoner" for exercising their First Amendment rights "violate the Constitution quite apart from any underlying misconduct they are designed to shield." Rhodes, 408 F.3d at 567 (citations omitted).

It simply cannot be said at this early stage in the proceedings that Defendants are entitled to qualified immunity for their allegedly purely retaliatory adverse actions against Plaintiff.

D. California Tort Claims Act

Defendants argue that Plaintiff's state law claims under § 1367 should be dismissed with prejudice because Plaintiff fails to allege facts showing that he complied with the filing requirements of the California Tort Claims Act. Because Plaintiff does not allege compliance, but may be able to do so in amendment, the Court will dismiss Plaintiff's state law claims with leave to amend.

Under California law, a prerequisite to filing a lawsuit against a state employee is the filing of a tort claim in the time and manner prescribed by the California Tort Claims Act. Munoz v. California, 33 Cal. App. 4th 1767, 1776 (1995). Under the Act, a tort claim against a state employee must be presented to the California Victim's Compensation Government Claim Board (VCGCB) within six months of the accrual of the cause of action. See Cal. Gov. Code § 911.2. If a claim is rejected by VCGCB, a plaintiff must file a court action within six months of the rejection. Because a plaintiff's failure to file a timely claim with VCGCB is fatal to their cause of action, they must allege compliance to state a claim. See Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992) (citing City of San Jose v. Super. Ct. (Lands Unlimited), 12 Cal. 3d 447, 454 (1974)).

In his FAC, Plaintiff does not allege any facts indicating that he complied with the California Tort Claims Act. But in his opposition, he points to two documents to suggest that he filed timely claims. First, he points to his declaration where he states that he filed a claim with VCGCB and never received a response. See Opp'n (ECF No. 28) at 17. Second, Plaintiff points to an Inmate Statement Report from October 30, 2025. See id. Three items in the report show withdrawals for "GOV CLAIMS." Id. at 28. Plaintiff also includes two VCGBC forms with most of the sections filled out, although the signature and date fields are left blank. See id. at 30–33.

Defendants argue that these documents show that "Plaintiff clearly acknowledges in his opposition . . . that he failed to comply with the Tort Claims Act before filing the FAC asserting state law claims." Reply (ECF No. 29) at 4. Defendants point to several deficiencies in Plaintiff's filings to argue that he not only fails to allege compliance with the Act, but that "further amendment will not correct these deficiencies." Id. at 5.

United States District Court
Northern District of California

Although Plaintiff's documents arguably suggest that he may not be able to allege compliance with the California Tort Claims Act, it is not clear that he cannot. Plaintiff's deficiencies may be cured if there are more claim filings than the two that he included in his opposition. And even if there are no additional claims, Plaintiff may be able to explain how his claims, despite the seeming compliance deficiencies that Defendants identify (such as apparent untimeliness), are nonetheless compliant. Under the circumstances, Plaintiff's state law claims will be dismissed for failure to allege compliance with the California Tort Claims Act with leave to amend to allege compliance, if possible. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts").

E. Motions for Leave to Amend and for Preliminary Injunctive Relief

Plaintiff recently filed a motion for leave to file a second amended complaint to add two more defendants – Warden Chance Andes and Investigative Service Unit Officer E. Cervantes – to this action, and a motion for preliminary injunctive relief reinstating his access to prison media vocation programs.

Because Plaintiff is being afforded an opportunity to amend to allege compliance with the California Tort Claims Act, if possible, he will be afforded an opportunity to add Andes and Cervantes as defendants to this action on amendment as well. But in order to properly do so, Plaintiff must set forth specific allegations in the second amended complaint showing exactly how Andes and Cervates actually and proximately caused the deprivation of the constitutional right(s) of which he complains. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff's motion for preliminary injunctive relief is dismissed without prejudice to renewing with (or after he files) a second amended complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 25) is GRANTED IN PART AND DENIED IN PART. The FAC is DISMISSED with leave to amend, as indicated above, within 28 days of this order. The pleading must be simple and concise and must include the caption and civil case number used in this order and the words SECOND AMENDED

COMPLAINT on the first page. Failure to file a proper second amended complaint within the designated time will result in the dismissal of this action.

Plaintiff is advised that the second amended complaint will supersede the original complaint, FAC and all other pleadings. Allegations, claims and defendants not included in the second amended complaint will not be considered by the Court. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

The clerk is directed to terminate the motions appearing on ECF as items number 25, 30 and 31.

**IT IS SO ORDERED**.

Dated: July 28, 2026

CHARLES R. BREYER
United States District Judge