FILED

AUG 10 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Plaintiff's Name Steven Brooks

Prisoner No. K-16234

Institutional Address San Quentin Rehabilitation Center
5-N-37L
San Quentin, California 94964

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN BROOKS
*(Enter your full name)*

v.

GUIM'MARA BERRY, J FERNANDEZ,
C. ANDES, E. CERVANTES, T. REYNOLDS,
E. PATAO, T. JOHNSON, Y. FRANCO,
~~F. RODRIGUEZ~~

*(Enter the full name(s) of all defendants in this action)*

Case No. 3:25-cv-00720 (CRB)
*(Provided by the clerk upon filing)*

SECOND AMENDED
COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

## I. Exhaustion of Administrative Remedies.

*You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.*

A. Place of present confinement San Quentin Rehabilitation Center

B. Is there a grievance procedure in this institution? ☒ YES ☐ NO

C. If so, did you present the facts in your complaint for review through the grievance procedure?
☒ YES ☐ NO

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue any available level of appeal, explain why.

1. Informal appeal: Bypassed

2. First formal level: Log # 497530, 508306, 527886

3. Second formal level: Same log numbers as first level

4. Third formal level: No. third level

E. Is the last level to which you appealed the highest level of appeal available to you?
☒ YES ☐ NO

F. If you did not present your claim for review through the grievance procedure, explain why.
Inapplicable. All administrative remedies and Government Claims board remedies have been exhausted.

## II. Parties.

A. If there are additional plaintiffs besides you, write their name(s) and present address(es).
~~None~~. There are three John Doe Defendants in the Investigative Services Unit who have not been identified yet. They may be added after discovery.

B. For each defendant, provide full name, official position and place of employment.
Defendats Guim'mara Berry, Chance Andes, E. Cervantes, J. Fernandez, E. Patao T. Reynolds, T. Johnson, Y. Franco and F. Rodriguez are all employees of the California Department of Corrections and Rehabilitation at San Quentin Rehabilitation Center

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.
On December 8, 2023, Defendant Berry fired the Plaintiff from his paid job assignment as Editor-in-Chief of San Quentin news, a newspaper publication written and produced by incarcerated individuals. Defendant Berry also banned the Plaintiff from working as assistant producer of Ear Hustle and KALW radio's

Uncuffed podcasts and from membership in the San Quentin chapter of the Society of Professional Journalists and all media center programs, including accessing the facility. Defendant Berry terminated plaintiff due to his prison reform advocacy efforts, inwhich Plaintiff cofounded an incarcerated group called The People In Blue (TPIB), who wrote a report on prison reform and sent it to the Governor's advisory team, who compiled the Reimaging San Quentin Report. Defendant Berry also terminated plaintiff for articles he wrote that were considered to be critical of the prison, including a Christmas podcast story done for Bay City News Foundations Local News Matters. Plaintiff was accused of failing to get permission from the prison to publish the articles and refusing to allow the Defendants to vet, sanction or approve the articles published in outside media outlets. Each of the Defendats also engaged in a series of retaliatory actions against Plaintiff for writing grievances against them over his termination from the newspaper, including writing repeated rule violation reports against Plaintiff related to the media center, banning him from education facilities, ransacking Plaintiff's cell on repeated occassions, due to articles published and confiscating an authorized laptop computer Plaintiff was using for his college education. The Defendants had no legitimate penological purpose for terminating plaintiff, destroying his cell, banning him from media programs, confiscating his laptop, or filing a series of rule violation reports.

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

Request for compensatory, punitive, nominal damages, declaratory relief and a trial by Jury. Injunctive relief should also be ordered to restore Plaintiff's access to jobs and programming in the prison and to negate rule violation reports that were administered in retaliation for the plaintif's prison reform efforts and journalism

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: 8-5-2026 (Date) [signature] (Signature of Plaintiff)

Steven Brooks K16234
San Quentin Rehabilitation Center
5-N-37Low
San Quentin, California 94974

Plaintiff: Pro Per

**IN THE UNITED STATES DISTRUCT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNNIA**

**SAN FRANCISCO DIVISION**

**STEVEN BROOKS,**

Plaintiff,

**V,**
**GUIM'MARA BERRY,**
Defendants
_______________________________________/

CASE No. 3:25-cv-00720 (CRB)

**SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**I.INTRODUCTION/PRELIMINARY STATEMENT**

1. This is a civil rights action for monetary damages, injunctive, declaratory, and other relief by Plaintiff Steven Brooks, an incarcerated person, pursuant to 42 U.S.C. section 1983, and California state law pursuant to 28 U.S.C. section 1367. Plaintiff seeks to vindicate his rights under the First Amendment to the United States Constitution and for related State law violations, against officials at San Quentin Rehabilitation Center ("SQRC").

2. Defendants G. Berry, C. Andes, E. Cervantes, J. Fernandez, T. Reynolds, E. Patao, T. Johnson, Y. Franco and F. Rodriguez, and does 1 and 2, acting under color of state law, are engaging in a calculated and continuous campaign of retaliation against Plaintiff for his work as a journalist and his advocacy work for prison reform. After plaintiff wrote several articles unpleasing to Defendants and he co-founded the prisoner advocacy group, The People In Blue (TPIB), who submitted a report on prison reform to the

Governor's Office, Defendant Berry terminated Plaintiff from his paid position as Editor-in-chief of the San Quentin News; banned him from the media center; and as a podcast producer for Ear Hustle and KALW Uncuffed podcasts. Defendant Berry also banned plaintiff from attending meeting at the San Quentin chapter of Society of Professional Journalists, and the education department. The Defendant also used other correctional employees to subject Plaintiff to a series of retaliatory and harassing false rule violation reports and cell searches because of articles Plaintiff wrote for Bay City News Foundation.

3. This Second Amended Complaint is filed pursuant to the Courts granting of a motion for leave to file an amended complaint on July 28, 2026.

**II. PARTIES**

4. Plaintiff **STEVEN BROOKS** ("Plaintiff") is, and at all times relevant to this Complaint was, an incarcerated person in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), housed at San Quentin Rehabilitation Center in San Quentin, California.

5. Defendant Lieutenant **GUIM'MARA BERRY**, ("Defendant Berry") is, and at all times relevant to this complaint was, the Public Information Officer at SQRC. She is sued in her individual capacity. At all times, Defendant Berry acted under color of state law.

6. Defendant **WARDEN CHANCE ANDES** ("Defendant Andes") is and at all times relevant to this Complaint was, the Warden of SQRC. He is sued in his individual and official capacities. At all times, Defendant Andes acted under color of state law.

7. Defendant **OFFICER E. CERVANTES** ("Defendant Cervantes") is, and at all times relevant to this complaint was, an officer in the Investigative Service Unit ("ISU") at SQRC. He is sued in his individual capacity. At all times, Defendant Cervantes acted under color of state law.8. Defendant **OFFICER J.**

**FERNANDEZ** (Defendant Fernandez") is and at all times relevant to this complaint was, an officer in the education department at SQRC. He is sued in his individual capacity. At all times, Defendants Fernandez acted under color of state law.

9. Defendant **LIEUTENANT T. REYNOLDS** ("Defendant Reynolds") is and at all times relevant to this complaint was a Lieutenant at SQRC. He is sued in his individual capacity. At all times, Defendant Reynolds acted under color of state law.

10. Defendant **E. PATAO** ("Defendant Patao") is and at all times relevant to this complaint was an Associate Warden at SQRC. He is sued in his individual capacity. At all times, Defendant Patao acted under color of state law as an Associate Warden and Chief Disciplinary Officer.

11. Defendant **OFFICER T. JOHNSON** ("Defendant Johnson") is and at all times relevant to this complaint was a Correctional Counselor II at SQRC. He is sued in his individual capacity. At all times, Defendants Johnson acted under color of state law.

12. Defendant **CAPTAIN Y. FRANCO** ("Defendant Franco") is and at all times relevant to this complaint was a Facility Captain at SQRC. She is sued in her individual capacity. At all times, Defendant Franco acted under color of state law.

13. Defendant **F. RODRIGUEZ** ("Defendant Rodriguez") is and at all times relevant to this complaint was a Lieutenant at SQRC. He is sued in his individual capacity. At all times, Defendant Rodriguez acted under color of state law.

**III. JURISDICTION AND VENUE**

14. This court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. section 1331 and 1343, as this action is brought under 42 U.S.C. Section 1983, to redress the deprivation of rights secured by the First Amendment to the United States Constitution.

15. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. section

1367, as they are so related to the federal claims that they form part of the same case or controversy.

16. Plaintiff has exhausted all State Law Claims as required under the California Tort Claims Act and no further State or administrative remedies are available to exhaust.

**IV. FACTUAL ALLEGATIONS**

**A. Background: Plaintiff's Protected First Amendment Activities**

17. On December 8, 2023, **Defendant Berry** retaliated against the Plaintiff for his work as a journalist at the San Quentin newspaper and for his prison advocacy work and journalism that was critical of the prison, by terminating him from his paid job assignment as editor-in-chief of San Quentin News, a newspaper publication written and produced by incarcerated people. Specifically, **Defendant Berry** became upset that Plaintiff wrote several articles critical of the prison and started a prison advocacy group called The People In Blue (TPIB), that wrote a report on prison reform and presented it to Gov. Gavin Newsom's advisory council. Defendant Berry confronted Plaintiff about why she was not allowed to "vet, sanction or approve" the prison reform report written by TPIB before it was released. The Defendant responded by terminating the Plaintiff and banning him from all media related programs, including the media center. When the Defendant found out Plaintiff was publishing articles at Bay City News Foundation (BCN), Local News Matters, **Defendant** Berry retaliated against Plaintiff by placing a false 128 B Classification in his central file records accusing him of using illegal recording devices to capture stories and of stealing pictures from the media center. In one specific instance, the Defendant accused Plaintiff of publishing a Christmas podcast story at BCN on December 25, 2024. The Defendant wrote a 128-B classification chrono complaining that the story was not "vetted, sanctioned or approved" by her or the prison and that it's publication at BCN violated San Quentin News Bylaws. The defendant then refused to except evidence from Plaintiff demonstrating that he used his approved Viapath tablet to do the Christmas Podcast story. The defendant also refused to answer an email from BCN Editor Dan

McMenamin explaining that Plaintiff used his approved Viapath tablet and not any illegal recording devices.

18. On December 8, 2023 **Defendant Berry** deliberately retaliated against the Plaintiff for his journalism and prison advocacy work, by filing a false 115 rules violation report accusing plaintiff of overfamiliarity with a staff member or volunteer. The Defendant deliberately filed the false report as a cover for Plaintiff's termination from the newspaper. Plaintiff was forced to file multiple grievances to finally be exonerated of the charges in August of 2024. During this time period the Defendant Berry also knew that Plaintiff was preparing for a Board of Parole Hearing in May of 2024. The false rule violation report for overfamiliarity elevated Plaintiffs Comprehensive Risk Assessment to a High Moderate before the false report was dismissed and plaintiff was forced under duress to delay his board appearance by one year. After plaintiff was exonerated of the overfamiliarity charges, he sought to get his job back through the prison grievance process. On March 11, 2025, **Defendant Berry** placed the false 128-B General Chrono in Plaintiff's central file records falsely accusing Plaintiff of using an illegal recording device to do the Christmas podcast story with BCN on December 25, 2024, and of violating San Quentin News bylaws. Defendant Berry was aware that Plaintiff was due for another Board of Parole hearing in May of 2025, when the Defendant deliberately placed the false information into Plaintiff's central file. When Plaintiff filed grievances challenging his termination from the newspaper and the falsehood of the rule violation reports, Defendant Berry became angrier stating: "You shouldn't have grieved me." The Defendant began a series of continuous retaliatory tactics against Plaintiff in which she involved other officers.

19. On January 12, 2024, **Defendant J. Fernandez** was working as the officer in charge of the education department. When **Defendant Fernandez** saw Plaintiff in the education department, where the media center is also located, he confronted Plaintiff and told him he was banned from the education department per Defendant Berry. Acting at the direction of Defendant Berry, Defendant **Fernandez**

wrote a false 128 rules violation report against the Plaintiff for being "out of bounds" in the education department during an ongoing investigation for overfamiliarity. There was no ongoing investigation. The investigation for overfamiliarity was completed on December 11, 2023, according to Investigative Service Unit (ISU) officer B. Lowden. **Defendant Fernandez** specifically wrote the rules violation report after contacting Defendant Berry by telephone and being encouraged by the Defendant to write the rule violation report; Because Plaintiff had filed a grievance against Defendant Berry. Defendant Berry and **Fernandez** conspired together to retaliate against Plaintiff for filing his grievance by filing the rule violation report for being "out of bounds." Defendant Fernandez specifically told Plaintiff, "she used to be my sergeant, if she asks me to write you up then that's what I'm going to do."

20. On January 12, 2024, Defendant **T. Reynolds** was the Senior Hearing Officer who heard the charges on the false 115 rules violation report written by Defendant Berry charging plaintiff with overfamiliarity. Defendant **Reynolds** admitted to Plaintiff during the hearing that he had spoken to Defendant Berry an hour prior to the 115 hearing and that he was going to find plaintiff guilty because "that is what Berry wanted." Defendant **Reynolds** refused to recognize Plaintiff's due process rights to a fair hearing. Plaintiff never received any investigative report concerning the overfamiliarity. Defendant T. Reynolds questioned Defendant Berry outside Plaintiff's presence about the charges and then told Plaintiff that "you have good issues for an appeal. I recommend you appeal this." Defendant Reynolds acted in concert with Defendant Berry to retaliate against Plaintiff, by finding him guilty of the original overfamiliarity charges.

21. Defendant **E. Patao** acted in concert with Defendant Berry to retaliate against the Plaintiff. **Defendant Patao** had specifically voiced his dislike for Plaintiff's prison reform efforts. He wanted Plaintiff removed from the newspaper because of the report written about prison reform with TPIB. Defendant **Patao** was the Chief Disciplinary Officer and it was his job to ensure Plaintiff received a fair

disciplinary hearing. When Defendant **Patao** did not do his job Plaintiff filed a grievance. Defendant Patao was assigned to hear the grievance about the disciplinary findings and denied all Plaintiff's grievances. Plaintiff was forced to go to the third level to get his grievance granted and a new hearing on the overfamiliarity charges. He was found "not guilty" in the new hearing..

22. Defendant **Y. Franco** was the Investigative Service Unit (ISU) Lieutenant in charge of overseeing the investigation for overfamiliarity against the Plaintiff. Defendant Franco was also the person who classified the rule violation report for overfamiliarity. Defendant Franco was eventually promoted to Facility Captain, where she handled all classification hearings concerning whether or not to place Plaintiff back in his job assignment as editor-in-chief. Defendant Franco told Plaintiff at his annual classification review that he would not be going back to his job because as far as she was concerned Plaintiff was guilty of overfamiliarity. Plaintiff filed a grievance and that grievance required Defendant Franco to conduct a new classification hearing to determine if Plaintiff should get his job back. Again, Defendant Franco doubled down and said "you're not getting your job back and "if you go near the media center you're getting another write up." The Defendant then told correctional counselor II T. Johnson to write a rule violation report against Plaintiff. Defendant Johnson wrote the rule violation report for unlawful influence and Defendant Franco classified the write up as a serious rule violation.

23. **Defendant T. Johnson** acting in concert with Defendant Berry and Franco, wrote a false 115 disciplinary report for unlawful influence against the Plaintiff. The charge was completely fabricated. Plaintiff requested audio/video surveillance footage to defend himself against the manufactured charges and the charge of unlawful influence was dismissed. This rule violation report was written 20 days before Plaintiff was to appear before a Board of Parole Hearing Panel to determine his parole suitability. The Defendants knew the report would affect Plaintiffs parole suitability and so they did not hear the

charges until after Plaintiff went before the Board panel. Because the rule violation report was not adjudicated yet Plaintiff waived his right to parole for three years under duress and fear of receiving a 5 or 7-year denial.

24. Defendant **F. Rodriguez** was the senior hearing officer assigned to hear Plaintiff's 115 rules violation report for unlawful influence, written by Defendant Johnson and classified by Defendant Franco. The Defendant deliberately waited until after Plaintiff's parole board hearing to adjudicate the charges. Upon determining Plaintiff had audio/video evidence demonstrating he was "not guilty" of the charges, Defendant Rodriguez met with Defendants Franco and Johnson outside the hearing room and Plaintiff's presence to devise a plan to find Plaintiff guilty of another rule violation, for which he was not charged. Defendant Rodriguez used video evidence that was irrelevant to find another charge. Defendant Rodriguez went to a portion on the video that showed Plaintiff in the media center for 11 seconds and found him guilty of being "out of bounds" in the media center. This finding was done specifically to act in concert with Defendants Berry, Franco, and Johnson, to retaliate against Plaintiff for exercising his right to use the grievance process against them. Each of the Defendants knew that their actions would prevent Plaintiff from getting a favorable review from the parole board.

**25. Defendant Chance Andes** was the Warden at San Quentin Rehabilitation Center at all times relevant to this complaint. On June 5, 2025, Plaintiff published an article at Bay City News Local News Matters titled: "As California Aims to Modernize San Quentin, Many of Its Residents May Be Forced To Leave." Soon thereafter **Defendant Andes** approached the Plaintiff on the lower yard at San Quentin in the morning hours around 10:30 AM and asked Plaintiff "what is going on with these articles?" "Why didn't You come and talk to me before you published?" Plaintiff informed **Defendant C. Andes** that he had a reached out to him through multiple grievance processes and through his parole lawyer and family who emailed Defendant Andes directly. Defendant Andes refused to answer. Plaintiff specifically sought help

from **Defendant Andes** regarding his termination from the newspaper and the false rule violation report for Overfamiliarity filed by Defendant G. Berry. Plaintiff knew that both issues would caste him in a bad light in front of the board of parole hearings panel. Defendant Andes ignored Plaintiff's request for help. Defendant Andes then stated: "I know what's going on and I saw the information and your removal from San Quentin News was justified. You were guilty of overfamiliarity." Plaintiff then reminded Defendant Andes that the decision was reversed on appeal and Plaintiff was later found "not guilty." Defendant Andes treated the findings as irrelevant. Plaintiff then told the warden that banning him from the media center was done under false pretenses. He also informed the warden that Defendant Fernandez was actively preventing the Plaintiff from getting a clerk job at Mount Tam College in the education department, which Plaintiff felt would help him rebuild his reputation. Plaintiff asked the Warden to please stop Defendant Fernandez and the other Defendants from retaliating against him by preventing him from getting another job. The warden responded, "I'll take care of it." However, Defendant Andes did not take care of it. Instead, he endorsed Plaintiff's removal from the media center based on a false rule violation report. Plaintiff continues to suffer retaliatory actions for his journalism, filing grievances, and lawsuits. Defendant Andes personally participated in and ratified the retaliatory employment termination and other retaliatory actions by subordinate officers, knowingly and deliberately in violation of Plaintiffs First Amendment rights and State Law. Defendant Andes endorsed Plaintiff's termination from the newspaper by using a pretextual justification that the institution itself had determined was untrue. Plaintiff was found "not guilty."

26. Investigative Services Unit (ISU) officer **E. Cervantes**, knowingly and deliberately violated plaintiff's First Amendment rights by personally carrying out multiple cell searches at the behest of Defendant G. Berry. Defendant Cervantes searched and ransacked Plaintiff's cell on December 30, 2024, after Plaintiff published a Christmas podcast story with Bay City News. He then provided details of the search to

Defendant Berry to put in the 128 B chrono she placed in Plaintiff's central file records. Defendant Cervantes again searched and ransacked Plaintiff's cell On June 17, 2026, one day after Plaintiff published an article at Bay City News about the $239 Million dollar Learning Center Sitting Empty over the weekend. Defendant Cervantes performed these retaliatory searches on behalf of Defendant Berry and reported the results of each of these searches directly to Defendant Berry. Defendant Cervantes also confiscated Plaintiff's authorized education laptop computer using false pretenses.

27. After Plaintiff wrote a grievance, the computer laptop was returned by two African American ISU officers. On July 8, 2026, Plaintiff was called to the triage clinic on the upper yard at approximately 11:45 AM. Defendants John Doe #1 and John Doe #2 returned Plaintiff's laptop. They then informed him that they went through Plaintiff's computer files and that Plaintiff is under investigation for "illegal business transactions." Both these unknown Defendants read Plaintiff his Miranda Rights and Plaintiff invoked his right to counsel, specifically because he knew that these two ISU officers were on a "fishing expedition" to try to find something to file a rule violation report against the Plaintiff as part of a continuing retaliatory pattern, showing callous and reckless disregard for Plaintiffs clearly established Constitutional rights under the First Amendment and State Law.

**V. CAUSES OF ACTION**

**Count One First Amendment Retaliation (42 U.S.C. section 1983 against all defendants)**

28. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

29. Plaintiff engaged in protected conduct under the First Amendment, including freedom of speech, freedom of the press, freedom of association, and the right to petition the government for redress of grievances, through his work as Editor-in-Chief, his formation and participation in The People In Blue, his authoring and dissemination of the Reform Report and his publication of news stories at Bay City News local News Matters. Each of the Defendants herein engaged in a series of retaliatory actions designed to

chill Plaintiff's First Amendment Activities.

30. Defendants took numerous adverse actions against Plaintiff, including but not limited to his termination from the San Quentin News, the bans from the Media Center, Education Department, and SPJ meetings, the harassing and retaliatory cell searches, and the seizure of Plaintiff's personal property, writing multiple false rule violation reports, launching fake investigations, including confiscating an authorized educational laptop and closing Plaintiff's education account. These actions would chill or silence a person of ordinary firmness from future First Amendment activities.

31. Defendant's adverse actions were motivated by Plaintiff engaging in protected conduct. The timing of the actions, immediately following Plaintiff's advocacy and publications, demonstrates a direct causal connection.

32. Defendant's actions did not reasonably advance any legitimate correctional goal. They were arbitrary and punitive acts that knowingly and deliberately violated clearly established laws and were intended to silence and punish plaintiff.

33. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered a loss of his employment and rehabilitation programs, his constitutional rights, emotional distress, monetary damages, loss of opportunity for freedom through the Board of Parole hearing process and more.

**Count Two Violation of the Tom Banes Civil Rights Act (Cal. Civ. Code Section 52.1)**

34. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

35. California Civil Code section 52.1, The Bane Act, provides a cause of action against any person who interferes, or attempts to interfere, by "threats, intimidation, or coercion," with an individual's exercise of rights secured by the U.S. or California Constitution.

36. Defendant's, by their action, interfered with Plaintiff's exercise of his First Amendment rights to

speech, press, association, and to petition the government,

37. The interference was accomplished through threats, intimidation, and coercion. The acts of terminating Plaintiff from his job, banning him from essential rehabilitative facilities, conducting punitive and ransacking cell searches, threatening classification hearings, and confiscating his means of education were coercive acts designed to force Plaintiff to cease his protected activities. As held in cases like Botts v. Sheppard, the essence of a Bane Act claim is that the defendant, through such coercive means, prevents a Plaintiff from doing something they have a right to do.

38. Defendant's acted with a specific intent to violate Plaintiff's rights, or at a minimum acted with deliberate indifference to those rights. As noted in Pearce v. Wit, a Bane Act claim is appropriate for this type of conduct.

39. As a direct and proximate result of Defendants' violation of the Bane Act, Plaintiff has suffered harm and is entitled to damages. Qualified immunity is not a defense to a Bane Act claim.

**COUNT THREE Intentional Infliction of Emotional Distress (California State Law)**

40. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

41. Under California law, a claim for intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress suffered by the Plaintiff; and (4) actual and proximate causation. See Gowdy v. Kern Valley State Prison.

42. Defendants conduct—engaging in a coordinated, multi-year campaign of retaliation, publicly stripping Plaintiff of his respected position, isolating him from journalistic and educational pursuits, repeatedly ransacking his cell, and deliberately sabotaging his college education—was extreme and outrageous, exceeding all bounds of that usually tolerated in a civilized society.

43. Defendants engaged in this conduct with the intent to cause Plaintiff emotional distress or with

reckless disregard for the high probability that their actions would do so.

44. As a direct and proximate result of Defendants outrageous conduct, Plaintiff has suffered and continues to suffer, severe emotional distress, including feelings of anxiety, depression, helplessness and despair from loss of opportunity for release on parole.

45. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

**COUNT FOUR Negligence (Cal. Civ. Code Sec. 1714)**

46. Defendants owed Plaintiff a duty of care, to act in good faith, by virtue of their position. Defendants breached that duty by fabricating false disciplinary reports for overfamiliarity and unlawful influence; by failing to return Plaintiff to his job position and for harassing plaintiff and ransacking his cell and ignoring his procedural due process rights at classification hearings.

**COUNT FIVE Defamation (Cal Civ. Code Section 44-46)**

47. Defendants Fernandez, acting under direction of Defendant Berry, made false, defamatory statements to Mount Tamalpais College staff, alleging that Plaintiff was a "troublemaker" involved in illicit activities, without any factual basis. They posted Plaintiff's Picture on a bulletin board. They banned him from education and accused Plaintiff of lacking journalistic integrity.

**COUNT SIX False Imprisonment/Wrongful confinement, (Cal. Pen. Code Sec. 236**

**Cal. Civ. Code Sec. 1714)**

48. By fabricating 115 rules violations reports for overfamiliarity and unlawful influence, the Defendants caused Plaintiff unlawful restraint, loss of liberty interests, removal from a paid job assignment, permanent ban from media related programming and placement under heightened surveillance, cell searches and harassment. Plaintiff was banned from rehabilitative activities and prevented from being able to present a case for suitability to parole board authorities.

**COUNT SEVEN Declaratory Judgment**

49. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

50. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties. Plaintiff contends that Defendant's actions, policies, and practices, as described herein violates his rights under the U.S. Constitution and state law. Defendants dispute these contentions.

51. Plaintiff is entitled to a judicial declaration that Defendants retaliatory actions, including terminating his employment, banning him from educational facilities, writing false rule violation reports, and seizing his property for exercising his First amendment rights, affected his ability to be found suitable for parole and to present himself in a positive light to parole authorities and was unlawful and unconstitutional.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as follows: 1. Compensatory damages in an amount to be determined by trial; 2. Nominal damages for the violation of his constitutional rights; 3. Punitive damages against each Defendant in their individual capacity in an amount sufficient to punish them for their malicious, willful, and reckless conduct and to deter similar conduct in the future; 4. A Declaratory judgment that the acts, policies, and practices of Defendants complained of herein violated Plaintiff's rights under the First Amendment to the United States Constitution and several California State Laws ; 5. Preliminary and Injunctive relief ordering Defendants, their agents, and successors to immediately reinstate Plaintiff's access to the media Center, his job, media related programs and the Education Department; immediately cease banning him from attending meeting with the Society of Professional Journalists; c. Immediately return Plaintiff's authorized educational laptop and restore his educational account access, and d. Expunge from plaintiffs central file any and all adverse records and rule violation reports related to the retaliatory actions described herein.

6. Attorney Fees and Costs pursuant to 42 U.S.C. section 1983 and any other applicable law; 7. Such other and further relief as the Court may deem just and proper.

**VI. DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues of triable fact.

Dated: August 5, 2026

Respectfully submitted.

Steven Brooks K16234
In Propria Persona

**VERIFICATION**

I Steven Brooks, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. section 1746, that I am the Plaintiff in the above-entitled action, that I have read the foregoing Second Amended Complaint, and that I know the contents thereof to be true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

Executed On August 5, 2026, at San Quentin California

Steven Brooks

# DECLARATION OF SERVICE BY MAIL

# BY PERSON IN STATE CUSTODY

(CCP 1013(A).2015.5)

I, Steven Brooks the undersigned, declare:

I am over the age of 18 years, and is ______ a party to this matter. I am a resident of SAN QUENTIN STATE PRISON, in the County of Marin, State of California. My prison address is as follows:

SAN QUENTIN REHABILITATION CENTER,

CDCR Number K16234, Cell # 5-N-37

SAN QUENTIN STATE PRISON

SAN QUENTIN, CALIFORNIA 94974

On, 8-5-2026, I served the attached:

SECOND AMENDED COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. SECTION 1983 AND DEMAND FOR DAMAGES

on the parties, at the address listed below, by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff) with postage fully prepaid, in a deposit box provided by San Quentin State Prison, for mailing in the United States Mail as per the regulations governing out-going Legal Mail.

| | |
|---|---|
| OFFICE OF THE CLERK<br>NORTHERN DISTRICT OF CALIFORNIA<br>450 GOLDEN GATE AVENUE<br>SAN FRANCISCO, CALIFORNIA 94102 | DEPARTMENT OF JUSTICE<br>OFFICE OF THE ATTORNEY GENERAL<br>455 GOLDEN GATE AVENUE #11000<br>SAN FRANCISCO, CALIFORNIA 94102-7004 |

I declare under penalty of perjury, under the laws of the State of California, that all the forgoing is true and correct.

Executed on August 5, 2026, at San Quentin, State of California.

[signature]

DECLARANT